UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-60911-BLOOM/Valle

VINCENT HUGHES,

    Plaintiff,

v.

WAL-MART STORES EAST, LP,
*a foreign limited partnership*
*doing business as*
Wal-Mart #1517

    Defendant.
_____/

### ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant Wal-Mart Stores East, LP's ("Defendant" or "Wal-Mart") Motion for Summary Judgment, ECF No. [19] ("Motion"). Plaintiff Vincent Hughes filed a Response in Opposition, ECF No. [41], to which Defendant filed a Reply, ECF No. [50]. The Court has carefully reviewed the Motion, all opposing and supporting submissions,[1] the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

### I. BACKGROUND

Plaintiff initiated this personal injury action against Defendant on March 18, 2022, in the 17th Judicial Circuit Court in and for Broward County, Florida. *See* ECF No. [1-2]. On May 13,

---

[1] Defendant filed a Statement of Material Facts, ECF No. [20] ("SMF"), with its Motion for Summary Judgment. Plaintiff filed a Response to Defendant's SMF, ECF No. [42] ("RSMF"), and a Statement of Additional Material Facts, ECF No. [43] ("SAMF"). Defendant filed a Response to Plaintiff's SAMF, ECF No. [51] ("RSAMF").

Case No. 22-cv-60911-BLOOM/Valle

2022, Defendant removed the case to this Court. *See* ECF No. [1]. The Complaint alleges one count of negligence against Defendant. ECF No. [1-2]. Specifically, Plaintiff alleges that on June 1, 2021, he was a business invitee at the premises owned, operated, and managed by Defendant. *Id*. ¶ 7. He further alleges that as he was entering the store, or shortly after entering the store, he slipped and fell on a wet floor. *Id*. ¶ 8. Plaintiff claims that as a direct and proximate result of Defendant's negligence, he suffered serious personal injuries and has in the past and will continue in the future to suffer damages. *Id*. ¶ 15.

On March 1, 2023, Defendant filed the instant Motion, ECF No. [19], along with its corresponding SMF, ECF No. [20], seeking summary judgment in its favor as to Plaintiff's claim.

## II. MATERIAL FACTS

Based on the Parties' briefings and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

### A. Plaintiff's June 21, 2021 Fall at Wal-Mart

On June 21, 2021, Plaintiff went to the Wal-Mart store located in Pompano Beach, Broward County, Florida. ECF No. [20] ¶¶ 1-2. It had rained that day, but it was not raining when Plaintiff arrived at Wal-Mart at approximately 8:00 p.m. *Id*. ¶ 3. Plaintiff walked into Wal-Mart, at a normal pace, through the double doors of the vestibule and veered left to retrieve a shopping cart. *Id*. ¶¶ 4-5. Plaintiff pulled out a cart and began to turn to approach the store entrance. *Id*. ¶ 6. After one or two steps, his feet slipped, and he fell onto his right side. *Id*. ¶ 7.

At his deposition, Plaintiff was asked if there was a foreign substance on the ground, and answered that when he walks, he looks straight ahead. ECF No. [20-1] at 50:3-5. "I don't walk looking down." *Id*. at 50:5. Plaintiff further testified that "after I fell I realized it was water on the floor." *Id*. at 50:12-13. He recalled "after [he] fell and got up it looked like the water was dripping off the carts, and that's what it was on the floor." *Id*. at 51:15-17. Plaintiff described the puddle

that he slipped in as being as large as half of his body. *Id*. at 54:3-8. The water did not have any track marks or footprints that he could see. *Id*. at 55:4-10. He conceded that he does not know how the water came to be on the floor, who caused the water to be on the floor, or how long before his fall it came to be on the floor. *Id*. at 55:20-56:3.

Nothing obstructed Plaintiff's view of the water on the floor or hid it in any way. ECF No. [20] ¶ 14. Nothing prevented Plaintiff from seeing the water as he approached but he did not see it because he was looking straight ahead. *Id*. ¶¶ 14-15. He also did not see any Wal-Mart employees in the area when he fell. *Id*. ¶ 19.

Less than three minutes after Plaintiff fell, the assistant store manager, Yesheira de Leon ("de Leon"), was called to the vestibule to handle the incident. *See id*. ¶¶ 26-29. De Leon spoke to Plaintiff and prepared a statement based on what he told her. *Id*. ¶ 31. It is disputed whether she took photographs where the fall occurred or the surrounding cart area while she was interacting with Plaintiff. *See id.* ¶ 32; ECF No. [42] ¶ 32. It is undisputed, however, that de Leon did not see any water on the ground in the area where Plaintiff fell. ECF No. [20] ¶ 33. Plaintiff did not take any of his own photographs of the water or the surrounding area. *Id*. ¶ 34.

Plaintiff claims that as a result of the incident, he injured his neck, both shoulders, right hip, and lower back. *Id*. ¶ 41. He first sought treatment four days later, on June 4, 2021. ECF No. [20] ¶ 42.

### B. Defendant's Shopping Cart Practices

One of Defendant's employees, Nathaniel R. Goodrich ("Goodrich"), worked at Wal-Mart for two years and was a supervisor on June 1, 2021. ECF No. [43-6] at 9:21-22, 10:18-19. He testified that two cart attendants usually work during a shift, and they bring carts inside using a machine that pushes the carts for them. *Id*. at 23:10-23. Goodrich confirmed that carts are brought in through a bay door in the back. *Id*. at 23:6-9. When the cart attendants bring carts in from outside

3

in the rain, water drips on the concrete floor. *Id*. at 24:17-20. He explained that there was a grated drain "primarily probably for the rain from the carts that they're bringing in." *Id*. at 24:21-25:2. When asked whether water getting on the floor from the carts was something that occurred regularly, Goodrich responded, "[w]ater on the floor from the carts? Probably every time it rained, yeah." *Id*. at 25:11-16.

Defendant's employee, Tamieka S. Houston ("Houston"), worked at Wal-Mart for six or seven months. ECF No. [43] ¶ 63. She testified that when it rains and they push the carts in from the outside, water drips from the back by the bay door all the way up to the tile. ECF No. [43-4] at 21:1-20. When asked whether "there are any procedures for any of the maintenance people or cart attendants to take towels and wipe those carts off when it's wet and raining," she replied "[t]hey don't wipe them off. They – these boys, they just spray them with the paper towels and that's it. Just spray them. Sometimes they don't even wipe it with the paper towel. They just spray it." *Id*. at 16:9-17. She further testified that "when it rains and the customer come [sic] in and the baskets come in wet, yeah, water get [sic] on the floor." *Id*. at 24:9-11.

### C. Plaintiff's Expert Disclosure

On January 17, 2023, Plaintiff made his expert witness disclosure, listing eight treating physicians who will testify at trial, including seven that were designated as "Hybrid Witnesses." ECF No. [20] ¶ 49; ECF No. [20-4]. Thereafter, pursuant to the Court's Scheduling Order, the discovery period closed on February 14, 2023. *See* ECF No. [15]. Defendant never requested to depose Dr. Jose Orta ("Dr. Orta"), Dr. Danni Driscoll ("Dr. Driscoll"), Solomon Normatov, PT, Johannie Francois, PA-C, Justin Neidich, PT, Dr. Evan Musman ("Dr. Musman"), or Dr. Harold Bach ("Dr. Bach") before or after Plaintiff's January 17, 2023, expert disclosure. ECF No. [43] ¶ 87. The first time Defendant challenged the sufficiency of the expert witness disclosures and medical reports under Rule 26 was on March 1, 2023, when it filed its Motion for Summary

Judgment, ECF No. [19], and Omnibus Motion *in Limine*, ECF No. [26]. *See* ECF No. [43] ¶ 89.

### III. LEGAL STANDARD

#### A. Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (citation omitted)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990) (citation omitted).

### B. Expert Disclosures

Federal Rule of Civil Procedure 26 requires a party to disclose to the other parties the identity of any witness it may use at trial to present expert testimony. *See* Fed. R. Civ. P. 26(a)(2). To properly disclose a retained expert, parties must disclose an expert's identity "accompanied by a written report." *Id*. at Rule 26(a)(2)(B). If the witness is not required to provide a written report, the party must disclose the subject matter on which the witness is expected to present evidence and a summary of the facts and opinions the witness is expected to testify to. *Id*. at Rule 26(a)(2)(C).

If a party violates Rules 26(a), Rule 37(c) provides for the exclusion of the expert evidence "unless the failure was substantially justified or is harmless." *See id.* at Rule 37(c)(1). The non-disclosing party bears the burden of showing that the failure to comply with Rule 26 was substantially justified or harmless. *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009). In making this determination, the Court considers four factors: "(1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Torres v. First Transit, Inc.*, No. 17-CV-81162, 2018 WL 3729553, at *2 (S.D. Fla. Aug. 6, 2018) (citation omitted). "Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1260 (S.D. Fla. 2015) (citation omitted). Ultimately, the "determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Smith v. Jacobs Eng'g Grp., Inc.*, No. 06-CV-496, 2008 WL 4264718, at *6 (N.D. Fla. Mar. 20, 2008), *report and recommendation adopted*, No. 06-CV-496, 2008 WL 4280167 (N.D. Fla. Sept. 12, 2008) (citation omitted); *Warren v. Delvista Towers*

*Condo. Ass'n, Inc.*, No. 13-CV-23074, 2014 WL 3764126, at *2 (S.D. Fla. July 30, 2014) (noting that a court has "great discretion in deciding whether to impose such a sanction" for failure to comply with expert witness disclosure requirements). Indeed, "[c]ourts have broad discretion to exclude untimely expert testimony—even when they are designated as 'supplemental' reports." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019).DISCUSSION

In the Motion, Defendant argues that summary judgment is warranted because Plaintiff has no proof of notice or causation, two essential elements of his claim. *See generally* ECF No. [19]. Specifically, Defendant contends that Plaintiff lacks evidence of both actual and constructive notice based on length of time or foreseeability. *Id*. at 4-10. Defendant argues that Plaintiff cannot prove medical causation through expert testimony because he failed to provide appropriate expert disclosures, limiting the testimony of his experts. *Id*. at 10-15. Plaintiff takes the contrary positions. *See generally* ECF No. [41]. He contends that a reasonable jury could find that Defendant had actual and constructive notice of the dangerous condition – the puddle on the floor. *Id*. at 4-9. Plaintiff asserts that his experts' causation testimony is admissible and will establish that his slip and fall at Wal-Mart caused the injuries for which he is seeking compensation. *Id*. at 9-14.

The Court begins its analysis by pointing out that, in this diversity case, it applies the substantive law of the state in which the case arose. *See Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132-33 (11th Cir. 2010). For that reason, the Court looks to Florida negligence law. In a negligence claim, Florida law requires that a plaintiff prove the following four elements: (1) the defendant had a duty to conform to a certain standard of conduct, (2) the defendant breached that duty, (3) the breach of that duty caused damages to the plaintiff, and (4) the plaintiff sustained damages. *Encarnacion v. Lifemark Hosps. of Fla.*, 211 So. 3d 275, 278-79 (Fla. 3d DCA 2017) (quoting *Wilson-Greene v. City of Miami*, 208 So. 3d 1271 (2017)). In a premises liability case,

Defendant, as a premises owner, owes Plaintiff, as a business invitee, "a duty to exercise reasonable care to maintain [its] premises in a safe condition." *Encarnacion*, 211 So. 3d at 278; *see also Palivicini v. Wal-Mart Stores E., LP*, 787 F. App'x 1007, 1010 (11th Cir. 2019) ("With respect to the duty element, 'a possessor of premises to which the public is invited has a legal duty to ascertain that the premises are reasonably safe for invitees.'") (citation and alteration omitted).

Because it is undisputed that Plaintiff was Defendant's business invitee, Defendant owed Plaintiff a duty to exercise reasonable care to maintain its premises in safe condition. Having established the first element, the Court proceeds to analyze the contested second and third elements of Plaintiff's claim.

### A. Notice

To demonstrate a breach in a premises liability case involving a transitory foreign substance, such as this one, the Florida Legislature has mandated that a plaintiff prove the defendant had prior notice—actual or constructive—of the dangerous condition.

Florida Statute § 768.0755 states, in relevant part, as follows:

> 1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:
>
> (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or
> (b) The condition occurred with regularity and was therefore foreseeable.

Fla. Stat. § 768.0755.

### i. Actual Notice

A premises owner has actual knowledge of a dangerous condition when its employees or its agents "know[ ] of or create[d] the dangerous condition." *Barbour v. Brinker Fla., Inc.*, 801 So.

2d 953, 957 (Fla. 5th DCA 2001) (citing *Food Fair Stores, Inc. v. Trusell*, 131 So. 2d 730, 732 (Fla. 1961)). Defendant argues that there is no evidence that it created the dangerous condition or knew of its existence. Plaintiff responds that the deposition testimony of Houston and Goodrich, as well as surveillance video, constitute evidence from which a reasonable jury could infer that Defendant had actual notice of the transitory foreign substance that caused him to fall to the floor.

Viewing the evidence in the light most favorable to Plaintiff, the Court agrees that the testimony of Goodrich and Houston establishes that Defendant had actual notice of the dangerous condition. The testimony is sufficient for a reasonable juror to conclude that when shopping carts were brought in from outside in the rain by cart attendants employed by Defendant, the water regularly dripped from the carts onto the floor. *See* ECF Nos. [43-4], [43-6]. Goodrich testified that when cart attendants bring carts in from outside in the rain, water drips on the concrete floor, probably every time it rains. ECF No. [43-6] at 24:17-25:16. Houston similarly testified that water gets on the floor when carts are brought in from outside because the cart attendants do not wipe the carts down properly. ECF No. [43-4] at 16:9-17; 21:1-20.

Defendant argues that there is no support for Plaintiff's contention that its cart attendants caused his fall. Defendant asserts that the surveillance video does not capture the incident and "shows no associates returning carts during this time, and even if they had, it is not clear that the carts would have been dripping wet[.]" ECF No. [50] at 4. The Eleventh Circuit explained that where a "recording does not clearly depict an event or action, and there is evidence going both ways on it" it is to be viewed in the light most favorable to the nonmoving party. *Shaw v. City of Selma*, 884 F.3d 1093, 1097 n. 1 (11th Cir. 2018).

Undisputed record evidence reveals that Plaintiff does not know how the water came to be on the floor, who caused the water to be on the floor, or how long before his fall it came to be on

9

Case No. 22-cv-60911-BLOOM/Valle

the floor. ECF No. [20-1] at 55:20-56:3. And de Leon, the assistant store manager who responded to the incident, testified that she did not see any water on the ground in the area where Plaintiff fell. ECF No. [20] ¶¶ 29, 33.

Nevertheless, viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has provided sufficient evidence from which a reasonable jury could conclude that Defendant's employee caused the dangerous condition, the puddle on the floor. It is undisputed that it had rained earlier on June 1, 2021, ECF No. [20] ¶ 3. The testimony of Goodrich and Houston establishes that when cart attendants brought shopping carts in from outside in the rain, water regularly dripped from the carts onto the floor. *See* ECF Nos. [43-4], [43-6]. Plaintiff testified that after he fell and got up, he concluded that "after I fell and got up it looked like the water was dripping off the carts, and that's what it was on the floor." ECF No. [20-1] at 51:15-17. Defendant asserts that the surveillance video does not show an employee of Defendant pushing in a wet cart. *See* ECF No. [29], Surveillance Video.[2] However, the testimony of Goodrich and Houston supports the proposition that ordinarily cart attendants pushed carts in through a bay door in the back using a machine. ECF Nos. [43-4] at 21:1-20, [34-6] at 23:6-9. The surveillance video does not depict the bay door.[3] *See* Surveillance Video. The Court therefore finds that a reasonable jury could permissibly conclude that Defendant's employee brought shopping carts in through the back bay door without drying them and that the carts dripped, causing a puddle to form.

---

[2] The surveillance video was filed conventionally on a flash drive which includes two recordings taken from different camera angles during the same time span. Defendant filed the Supplemental Attachment form reflecting that the flash drive was filed with the Court on March 2, 2023. ECF No. [29]. When referencing either of the two recordings contained on the flash drive, the Court cites to "Surveillance Video."
[3] The surveillance video does, however, show the front door to the store. *See* Surveillance Video. Upon the Court's review of the surveillance video, there appears to be a cart attendant pushing an empty machine past the front entrance at time stamps 7:09 p.m. and 8:10 p.m. *See id*. The video also depicts a cart attendant pushing a machine with many carts at time stamp 7:44 p.m. *See id*. A reasonable inference could be drawn that shopping carts were being brought into the store by cart attendants during the relevant period.

Case No. 22-cv-60911-BLOOM/Valle

Accordingly, there is a genuine dispute of material fact as to whether one or more of Defendant's employees, created the dangerous condition, placing Defendant on actual notice.

### ii. Constructive Notice

Even if Plaintiff did not provide sufficient evidence to survive summary judgment as to actual notice, Plaintiff has supplied sufficient evidence to create a genuine dispute of material fact on the issue of constructive notice. A Plaintiff may prove constructive notice in one of two ways: (1) "[t]he dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition;" or (2) "[t]he condition occurred with regularity and was therefore foreseeable." Fla. Stat. § 768.0755(1)(a)-(b).

Defendant argues that there is no evidence to establish that it had constructive notice of the substance on the floor based on either length of time or foreseeability. Plaintiff responds that Defendant had constructive notice of the dangerous condition because water dripping from shopping carts "was something that occurred with regularity when it rained and was foreseeable." ECF No. [41] at 7. Plaintiff further asserts that Defendant and its employees failed to follow Defendant's own policies and procedures and did not inspect the area in question for twenty-three minutes prior to Plaintiff's fall.

### a. Constructive Notice: Foreseeability

Defendant contends that Plaintiff has no proof that the dangerous condition that caused his slip and fall occurred with such regularity that the alleged incident was foreseeable. In Response, Plaintiff again relies on the testimony of Houston and Goodrich to support his argument that Defendant was on constructive notice because the dangerous condition occurred with regularity and was therefore foreseeable.

Defendant cites two cases for the proposition that Plaintiff has not submitted evidence

11

sufficient to show constructive knowledge based on foreseeability. The first, a Fifth District Court of Appeals case, supports Plaintiff's position that there was constructive notice. *See Kitsopoulos v. Mathers Bridge Rest., Inc.*, 627 So. 2d 68, 68-69 (Fla. 5th DCA 1993). In that case, the court reversed a grant of a directed verdict in favor of the defendant where the plaintiff presented testimony from a cook and part-time maintenance man who worked for the defendant that "the boards on the dock came loose 'pretty frequently.'" *Id*. The employee of that defendant explained that "[h]e was verbally instructed 'to check the dock and maintain it when it needed it,' 'about every couple of weeks at least.'" *Id*. at 68. He also testified that "he had repaired the dock on 'quite a few occasions.'" *Id*. The *Kitsopoulos* court held that "[a]lthough [plaintiffs] were unable to show how the particular board became loose or how long it had been in a loose condition, they could show that Mathers Bridge had received numerous complaints about loose boards on the dock and frequently had to repair them" so, "the jury should have been permitted to determine whether Mathers Bridge had exercised reasonable care to protect its invitees against the danger foreseeably created by loose boards on its dock." *Id*. at 69.

The second case Defendant relies on, a case from a court in this district, involved a claim of negligence where the plaintiff slipped and fell on metal hangers that had been left on the floor of the defendant's store. *Fonseca v. Wal-Mart Stores, E., LP*, No. 18-CV-62768, 2019 WL 7371813, at *1 (S.D. Fla. Sept. 23, 2019). There, in response to a motion for summary judgment, the plaintiff submitted testimonial evidence from an employee of the defendant that "hangers fall on the floor from time to time." *Id*. at *4. When the plaintiff's counsel followed up by asking "Regularly happens, doesn't it?" the employee responded "not 'Yes,' but rather 'It happens.'" *Id*. The employee replied "No" when asked "Do you even know whether or not hangers fall on the floor frequently …" *Id*. The *Fonseca* court therefore found that the employee's deposition

Case 0:22-cv-60911-BB Document 52 Entered on FLSD Docket 05/01/2023 Page 13 of 20

Case No. 22-cv-60911-BLOOM/Valle

testimony "does not create a genuine dispute of material fact with respect to the 'regularity' of the dangerous condition." *Id*. at *5.

Although Plaintiff provided cases to assert the legal standard for constructive knowledge, Plaintiff did not rely on any analogous cases to support his position. Nevertheless, the evidence provided by Plaintiff makes this case analogous to *Kitsopoulos*. Goodrich's deposition includes the following relevant question and answer:

> Q. Would you agree, like, is this something that – the water on the floor from the carts, is that something that occurred regularly, Mr. Goodrich?
> A. Water on the floor from the carts? Probably every time it rained, yeah.

ECF No. [43-6] at 25:11-16. Rather than an equivocal answer like the one offered by the defendant's employee in *Fonseca*, Goodrich testified that water dripped onto the floor from the carts, leading to the dangerous condition relevant to this action, "probably every time it rained." *Id*. Even though Goodrich did not say "definitely every time it rained," the modifier probably, in context, permits a reasonable inference that the carts drip water on the floor regularly even if not every single time.

Moreover, in *Hernandez v. Walmart Stores, Inc.*, a court in this district denied summary judgment based on similar facts. No. 21-CV-20861, 2022 WL 1642814, at *6 (S.D. Fla. Apr. 28, 2022), *report and recommendation adopted,* No. 21-CV-20861, 2022 WL 2974836 (S.D. Fla. July 27, 2022). The *Hernandez* court considered the testimony of defendant's employee "that he was aware that another bunker in the same store and several (at least four) similar bunkers in other stores operated by [defendant] had leaked water onto store floors on previous occasions[.]" *Id*. That court found that circumstantial evidence to be "sufficient evidence of [defendant's] history of leaking bunkers from which a reasonable inference can be drawn that the condition happened with sufficient regularity such that [defendant] should have known of the condition." *Id*.

Defendant points out the Plaintiff cited no case where a court found constructive

knowledge based on foreseeability when considering similar facts. However, it is undisputed that it rained on the day of the incident. Plaintiff testified that he observed water in the area where he fell. Those facts, coupled with the testimony of Goodrich that water dripped from the carts onto the floor probably every time that it rained, is sufficient evidence from which a reasonable jury could conclude that Defendant had constructive knowledge of the dangerous condition based on the regularity of its occurrence. Having determined that there is a genuine dispute of material fact as to constructive knowledge, the Court does not consider Plaintiff's remaining arguments.

### B. Causation

For the final element, causation, "there can be no liability for any tort unless it be shown that the defendant's act or omission was a *cause-in-fact* of the plaintiff's claimed injuries." *Stahl v. Metro. Dade Cnty.*, 438 So. 2d 14, 17 (Fla. 3d DCA 1983) (emphasis added). "Causation cannot be based on the stacking of inferences or assumptions, and the mere possibility of causation is insufficient to establish liability." *50 State Sec. Serv., Inc. v. Giangrandi*, 132 So. 3d 1128, 1149 (Fla. 3d DCA 2013) (citing *Stanley v. Marceaux*, 991 So. 2d 938, 939-40 (Fla. 4th DCA 2008)).

Defendant argues that causation requires expert testimony, and Plaintiff failed to provide appropriate expert disclosures so his listed experts must be precluded from testifying on issues of causation. Plaintiff responds that his treating physicians may testify about causation because his disclosures are sufficient.

Plaintiff's seven witnesses are designated as "Hybrid Witnesses" and intend to testify as to causation, the necessity of care and treatment of Plaintiff's injury, and/or the reasonableness, relatedness, and customary nature of the charges. The parties dispute whether they are experts for whom a full report should have been required under Rule 26(a)(2)(B). Alternatively, Defendant contends that Plaintiff's disclosure fails to comply with the less demanding requirements of Rule 26(a)(2)(C). The Court first considers whether Plaintiff's disclosure satisfies the requirements of

Rule 26(a)(2)(C).

Federal Rule of Civil Procedure 26 requires a party to disclose to the other parties the identity of any witness it may use at trial to present expert testimony. *See* Fed. R. Civ. P. 26(a)(2). To properly disclose a retained expert, parties must disclose an expert's identity "accompanied by a written report." *Id*. at Rule 26(a)(2)(B). If the witness is not required to provide a written report, the party must disclose the subject matter on which the witness is expected to present evidence and a summary of the facts and opinions the witness is expected to testify to. *Id*. at Rule 26(a)(2)(C). Defendant cites a 2012 case from this district for the proposition that "[i]n determining whether a Rule 26(a)(2)(B) or a Rule 26(a)(2)(C) expert report is required, the label of treating physician is irrelevant; instead, the determination turns on the substance of the physician's testimony." ECF No. [19] at 11 (citing *In re Denture Cream Products Liab. Litig.*, 09-CV-2051, 2012 WL 5199597, at *4 (S.D. Fla. Oct. 22, 2012). In that case, the court held that "treating physicians offering opinions beyond those arising from treatment are experts from whom full Rule 26(a)(2)(B) reports are required. *"In re Denture Cream*, at *4.

This Court previously found, consistently with the *In re Denture Cream* court, that when a treating physician testifies regarding the opinions he formed during the course of treatment, the treating physician does not need to produce a Rule 26(a)(2)(B) report. *Torres v. First Transit Inc.*, No. 17-CV-81162, 2018 WL 3729553, at *2 (S.D. Fla. Aug. 6, 2018). "Treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis, and the extent of disability, if any, caused by the condition or injury." *Jones v. Royal Caribbean Cruises, Ltd.*, No. 12-CV-20322, 2013 WL 8695361, at *5 (S.D. Fla. Apr. 4, 2013) (quoting *Levine v. Wyeth, Inc.*, 2010 WL 2612579, No. 09-CV-854, at *1 (M.D. Fla. June 25, 2010)). "[B]ecause a treating physician considers not only the plaintiff's diagnosis and prognosis,

opinions as to the cause of injuries do not require a written report if based on the examination and treatment of the patient." *Levine*, 2010 WL 2612579 at *1.

However, a treating physician offering opinions beyond those arising from treatment, who is retained or employed for the purposes of reaching and offering such opinion, is considered to be an expert from whom a full Rule 26(a)(2)(B) report is required, unless the failure to disclose is substantially justified or harmless. *See Torres v. First Transit Inc.*, 2018 WL 3729553, at *2. The court in *Torres v. First Transit Inc.*, considered four factors when considering whether the failure to disclose was substantially justified or harmless: "(1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *See id.* (quoting *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, No. 09-CV-60351, 2010 WL 1837724, at *4 (S.D. Fla. May 3, 2010)).

Plaintiff timely made his expert witness disclosure, listing eight treating physicians who will testify at trial, including seven that were designated as "Hybrid Witnesses." *See* ECF No. [20-4]. Defendant did not challenge the sufficiency of Plaintiff's expert disclosure until filing the instant Motion and its Omnibus Motion *in Limine*, ECF No. [26]. In the intervening weeks, the discovery deadline passed.

The Court agrees with Defendant that Plaintiff's disclosures are deficient under Rule 26(a)(2)(C) because they fail to provide the required "summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(ii). Plaintiff's disclosures do not include summaries of the facts each expert relied on and instead refer generally to the medical provider's records. *See* ECF No. [43-8]. While the disclosure lists some of the opinions of the witnesses, including Dr. Driscoll who "is expected to testify that Plaintiff suffered injury [sic] his

cervical and lumbar spine as a direct result of the slip and fall on June 1, 2021 at issue . . ." it does not provide the expected opinions of all witnesses. *See id*. For example, the disclosure indicates that multiple witnesses will "testify as to the injuries sustained" but the disclosure does not include the actual diagnoses or a list of injuries any witness will testify that Plaintiff sustained. *See id*.

Courts in this district have found that such disclosures, which lists the names of providers, their area of specialty, the topics they will testify or opine about, but not the content of those opinions or facts relied on in reaching them, to be insufficient under Rule 26(a)(2)(C). *See Torres v. Wal-Mart Stores E., L.P.*, 555 F. Supp. 3d 1276, 1299 (S.D. Fla. 2021) (holding that the plaintiff's disclosure did not comply with Rule 26(a)(2)(C) because "while [plaintiff] outlined the subject matter of [the expert's] testimony, he never provided a legitimate summary of the facts and opinions [the expert] will be testifying about."); *Jones*, 2013 WL 8695361, at *4 ("Plaintiff's expert witness disclosures simply lists the names of his treating physicians . . . It is therefore clear that Plaintiff did not comply with Rule 26(a)(2)(C). Indeed, the reader of Plaintiff's disclosures has no idea what opinion the doctors will offer or on what facts the doctors will base those opinions."). The Court therefore proceeds to consider each of the four relevant factors to determine whether the failure to adequately disclose was substantially justified or harmless.

It appears to be undisputed that the testimony of Plaintiff's experts is essential to his claim. Defendant argues that Plaintiff cannot prove the necessary element of causation without the testimony of an expert who can render a medical causation opinion. ECF No. [19] at 13-15. Plaintiff does not dispute this point. Indeed, the Eleventh Circuit has held that "[w]hen the causal link between alleged injuries and the incident at issue is not readily apparent to a lay person, expert medical testimony as to medical causation is typically required." *Rivera v. Royal Caribbean*

*Cruises Ltd.*, 711 F. App'x 952, 954 (11th Cir. 2017). The Court therefore finds that the first factor, the importance of the excluded testimony, weighs against exclusion of Plaintiff's experts.

Second, Plaintiff argues that the reports from its experts, Dr. Driscoll, Dr. Musman, and Dr. Bach, are sufficient to satisfy Rule 26(a)(2)(B). The Court notes that Plaintiff's disclosure indicates that curriculum vitaes and reports prepared by those three doctors were disclosed. *See* ECF No. [43-8]. Those reports were not provided so the Court cannot assess their sufficiency. Regardless, the Court has already determined that Plaintiff's disclosures were insufficient under Rule 26(a)(2)(C). It does appear, however, from a review of the record, the Motion, and Response that Plaintiff made its expert witness disclosures in good faith, albeit inadequately.

With regard to the third factor, prejudice, "[p]rejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." Bowe v. Pub. Storage, 106 F. Supp. 3d 1252, 1260 (S.D. Fla. 2015) (citation omitted). Plaintiff timely provided Defendant with the names of all of Plaintiff's experts and a summary of the topics on which they will offer testimony. Defendant argues that it will be prejudiced because while it "has received some medical records, it has not deposed the physicians, and the discovery cutoff has expired." ECF No. [50] at 9. However, Defendant had the opportunity to seek the intervention of the Court for Plaintiff's non-compliance before the discovery cut-off but failed to do so. Similarly, Defendant had an opportunity to depose any of Plaintiff's disclosed witnesses before the discovery deadline, but the record plainly reveals that Defendant never requested to depose Dr. Orta, Dr. Driscoll, Solomon Normatov, PT, Johannie Francois, PA-C, Justin Neidich, PT, Dr. Musman, or Dr. Bach after Plaintiff's January 17, 2023, expert disclosure. ECF No. [43] ¶ 87.

Tellingly, this Defendant has been warned by this Court and other district courts in Florida that it will not be rewarded for gamesmanship when it waits until after the close of discovery to raise issues with the sufficiency of a plaintiff's disclosures. *See Herrera v. Wal-Mart Stores East, L.P.*, No. 17-cv-60087, 2017 U.S. Dist. LEXIS 221550, at *5 (S.D. Fla. May 15, 2017) (denying motion to strike experts when the defendant waited to raise the sufficiency of the disclosures for the plaintiffs' treating physicians until after the close of discovery); *Torres v. Wal-Mart Stores E., L.P.*, 555 F. Supp. 3d at 1300 ("We won't reward Wal-Mart's 'gamesmanship' with an easy win."); *Galluccio v. Wal-Mart Stores E. LP*, No. 20-CV-240, 2021 WL 5033816 (N.D. Fla. Oct. 15, 2021). Therefore, "the potential prejudice to [Plaintiff] of striking [his] experts far outweighs any prejudice to Defendant, especially when Defendant neglected to involve the Court sooner." *Torres v. First Transit Inc.*, 2018 WL 3729552, at *3.

Fourth and finally, the Court is not inclined to grant a continuance or reopen discovery with trial scheduled to begin in three weeks.

Having considered the relevant factors, the Court will not preclude the testimony of Plaintiff's experts because the deficiencies in Plaintiff's disclosure were harmless and could have been timely rectified had Defendant sought relief sooner. However, as the Court stated in *Torres v. First Transit Inc.*, those treating physicians who cannot be deemed an expert witness and can only be deemed a fact witness "must be precluded from testifying regarding causation issues if that testimony is not 'sufficiently related' to the information disclosed during the course of Plaintiff's treatment . . . ." *Id.* at *3 (internal quotation marks and citation omitted).

Although Plaintiff argues that "[a]ll of the opinions formulated are based upon the physical examinations, observations and treatment rendered to [him] while he was a patient at Total MD" that assertion appears to be contested. ECF No. [41] at 12. Defendant responds that "it argues only

19

that this Court must limit the testimony to the records, prohibiting expert testimony on the issue of causation." ECF No. [50] at 9. As such, the record does not make clear what opinions each expert will offer, or which opinions were formed during each treating physician's treatment of Plaintiff. The Court therefore cannot determine whether the causation opinions were formed during and based upon observations made in the course of treatment. As such, the Court reserves ruling on the admissibility of causation opinions until the trial. *In re Seroquel Products Liab. Litig.*, Nos. 06- MD-1769, 07-CV-15733 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009) (deferring ruling so that questions of foundation, relevancy, and potential prejudice may be resolved in the proper context).

Because the Court will not exclude Plaintiff's experts' testimony under Federal Rules of Civil Procedure 26 and 37, and expert opinions on causation will be admitted if the proper foundation can be laid, Plaintiff may be able to prove causation. Therefore, judgment as a matter of law is not appropriate.

IV. **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment, **ECF No. [19]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 1, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record